BOWERS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 204.   Argued May 4, 1972.—Decided June 6, 1972.*
(Also reported in 197 N. W. 2d 769.)

For the plaintiff in error there was a brief by *Samson, Friebert, Sutton & Finerty* and *Robert E. Sutton,* all of Milwaukee, and oral argument by *Robert E. Sutton.*

For the defendant in error the cause was argued by *Richard J. Boyd,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J.   In arguing that the witness Bridges gave false testimony, which was known to the prosecution and

left uncorrected, defendant advances a three-pronged attack, which raises three issues on the review:

1. Was defendant denied due process in that Bridges had incorrectly stated at the trial that he had not discussed the case with the district attorney?

2. Was defendant denied due process in that the fact that Bridges had three charges pending against him was not revealed at trial?

3. Was defendant denied due process in that the state granted Bridges certain consideration in return for his testimony, this not being revealed at the trial?

*Incorrect testimony.*

At trial, when describing the time and the circumstances of the sale of the drugs, Bridges testified:

"*Q.* You've discussed this place [case] with Officer Bowers, I mean Officer Rodgers several times since the incident occurred; is that right ? *A.* No.

"*Q.* Never have? *A.* He never have discussed the case with me, no.

"*Q.* Did Officer Randa? *A.* No.

"*Q.* You didn't discuss it or, or talk with the district attorney either; is that right? *A.* No."

At the hearing on the motion for a new trial the assistant district attorney testified that he had talked to Bridges prior to the time he testified.

It is now claimed that under the rule of *Napue v. Illinois* [1] the prosecutor was obliged to correct the testimony of Bridges at trial and to correct the impression left that Bridges had not talked to the prosecutor prior to his testimony.

True, in *Napue* the Supreme Court of the United States reversed a criminal conviction in which the state's primary witness had lied when he said that the state had granted him no consideration in exchange for his testi-

---

[1] (1959), 360 U. S. 264, 79 Sup. Ct. 1173, 3 L. Ed. 2d 1217.

mony. In fact, the prosecutor had promised the witness a reduction of his sentence, and the prosecutor knowingly allowed the witness to give false testimony. But there are two important distinctions between *Napue* and the present case. *First,* the present action was a trial to the court, there was no jury. *Second,* the allegedly false testimony here does not go to showing a reason or a motivation for the witness to withhold the truth.

In *Napue* the United States Supreme Court considered whether the witness' credibility would have been affected had the jury been aware of the deal. Here there is no evidence to support the assertion of a deal between the state and the witness, although defendant attempts to draw that inference. In the instant case, the trier of fact was an experienced judge who is certainly aware of the custom of attorneys to discuss the witness' testimony with him prior to his giving that testimony. Thus, we question whether the rationale of *Napue* applies to the present case.

As a more basic response to defendant's argument, it is clear that this alleged false testimony could not "in any reasonable likelihood have affected the judgment of the" fact finder. *Napue* does not require reversal or a new trial unless the judgment of the fact finder could likely have been affected.[2] It must also be noted that this statement by Bridges does not go to an element of the crime.[3]

The testimony given by Bridges was not such as to demonstrate a desire to keep something from the court which would go to his credibility. In *Napue* the fact that the witness had been granted a "deal" would go to his credibility as a witness for the state, while here

[2] *Giglio v. United States* (1972), 405 U. S. 150, 92 Sup. Ct. 763, 766, 31 L. Ed. 2d 104, 108.

[3] *Cf. Simos v. State* (1972), 53 Wis. 2d 493, 498, 192 N. W. 2d 877.

the fact that he had talked briefly with the prosecutor prior to his testimony would raise no such inference.

## Pending charges.

Defendant argues that the fact that Bridges had three charges pending against him was not revealed at trial. The record is otherwise. Defense counsel asked Bridges if he had any charges pending against him at the time he co-operated with the police in buying heroin from defendant. Bridges responded: "Three." The matter was not pursued by defense counsel. Thus any error here was obviated by counsel's question.

Although defendant argues that this information goes to Bridges' credibility it is clear that even if the information was not of record—as it is—it could not be used to impeach a witness because only criminal *convictions* can be used for this purpose.[4] We conclude that there is no prejudice at all to defendant.

## Reduction of charges in exchange for testimony.

Following the defendant's trial the pending charges against Bridges were reduced. Defendant vigorously asserts that this reduction demonstrates that Bridges' testimony was the result of an undisclosed deal between the district attorney and Bridges. Reliance is again placed on *Napue*.

In *Napue* the state court found that the prosecutor had made a deal with the witness; that finding was not challenged in the federal court.[5] The present record contains no evidence at all to support such an assertion. At the hearing on the motion for a new trial counsel for defendant introduced affidavits from two inmates of the

---

[4] *See* sec. 885.19, Stats.

[5] *Supra,* footnote 1, at page 267.

Milwaukee county jail who alleged that Bridges had told them that he had lied about defendant's guilt in order to obtain some type of consideration from the Milwaukee police. A review of these affidavits, the credibility of which is questionable, demonstrates that these inmates did not assert that the district attorney's office had made a "deal" or that Bridges' testimony was in exchange for a charge reduction. On the other hand, Bridges testified at trial that there was no such consideration or deal, and at the post-trial hearing the assistant district attorneys testified at length not only that there was no deal but that the charges against Bridges were reduced because they were not good cases. The court was entitled to believe Bridges, the police and prosecutors, and not to believe the inmates' affidavits. The best defendant can do, if these affidavits are considered, is raise a suspicion about some type of "deal," but this is by innuendo. In *Napue* the fact is that there was a bargain between the witness and the prosecutor, while here the record shows that there was no bargain.

Our review of the entire record convinces us that the prosecutor did not withhold knowledge of any kind of deal with Bridges which could prejudice defendant. Neither *Napue* nor the other cases relied upon provide defendant any basis for relief.

*By the Court.*—Order affirmed.